1

2              THE HONORABLE MICHELLE L. PETERSON

3

4

5

6

7

8              UNTIED STATES DISTRICT COURT

9           WESTERN DISTRICT OF WASHINGTON

                    AT TACOMA
10

11  Joanna Lang, individually and as personal
     representative of the Estate Dick Lang, wife
12  and husband and the marital community;
     and Joanna Lang, as guardian and parent of
13  the minor children R.L. and C.L.,

14                          Case No.: 3:21-CV-05286-MLP

15  Plaintiffs,

16                       FIRST AMENDED COMPLAINT FOR
     v.                       DAMAGES AND INJUNCTIVE RELIEF
17

18  Cheryl Strange, individually and as         JURY TRIAL
     Secretary of the Washington State
19  Department of Social and Health Services
     (DSHS),
20

21  David Stillman, individually and as
     Assistant Secretary of the Economic
22  Services Administration (ESA) at DSHS,

23  Dana Phelps, individually and as Assistant
     Secretary of the Services and Enterprise
24  Support Administration (SESA) at DSHS,

25
     Terry Redmon, individually and as Interim
26  Director of Vocational Rehabilitation at
     DSHS,
27

28  Jane and John Does 1 through 10,
     individually and as employees at DSHS,
29

30  Clark County, Washington

COMPLAINT - 1

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

City of Vancouver, Washington, a
Municipality,

<u>Jon Pfister, individually and official
capacity,  Officer Goudschaal, individually
and official capacity, John and Jane Doe
Police Officers 1-10, et. al, in their
individual capacities and as municipal
employees,</u>

<u>And,</u>

Cowlitz County, Washington

City of Kelso, Washington, a Municipality,

<u> Sargent Troy Brightbill, individually and
official capacity and Deputy J Hammer,
individually and official capacity as
municipal employees, and John and Jane
Does 1-10, et. al.,</u>

<u>And,</u>

Dan Hsieh, individually and as Assistant
Attorney General of Washington State,

And,

Eimiko Murlin and Jeff Ian Murlin,
individually and as a marital community, as
foster parents of C.L.,

And,

Steve Vallembois and Jimmy Howard,
individually, as foster parents of R.L.,

And,

<u>Legacy Salmon Creek Hospital, Kimberly
Copeland, MD, Individually,</u> <u>and as an
employee,</u>

And,

COMPLAINT - 2

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

1
2    Beth Kutzera, Individually, and as an
3    employee of Department of Social and
     Health Services,
4
5    And,
6    Pamela Williams, Individually and as an
7    employee of the Department of Social and
     Health Services,
8
9    And,
10   Kaytena Gonzalez, Individually, and as an
11   employee of Department of Social and
     Health Services,
12
13   And
14    Janelle Redmond, Individually, and as an
15   employee of Department of Social and
     Health Services,
16
17   And,
18   Jennifer L. White, Individually and as an
19   employee of the Department of Social and
     Health Services,
20
21   And,
22   Sarah Coslow,  Individually and as an
23   employee of the Department of Social and
     Health Services,
24
25   And,
26   J. Aaron Merino, Individually and as an
27   employee of the Department of Social and
     Health Services,
28
29   And,
30

COMPLAINT - 3

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

Jaimee Scheffler, Individually and as an
employee of the Department of Social and
Health Services,

And,

Loraine Martinez, Individually, and as an
employee of the Department of social and
Health Services,

And,

Court Appointed Special Advocates
(CASA), Kathy Shirilla, Agent, individually
and as an Agent for as guardian ad litem,

                    Defendants.

## I.    INTRODUCTION

COMES NOW the above-named Plaintiffs, by and through their attorney of record,

KEVIN L. JOHNSON, P.S., Attorney & Counselor at Law, and for causes of action against the

above-named Defendants, and state as follows:

1.      This is a civil action commenced to vindicate the rights of Plaintiffs Joanna Lang and

her late husband Dick Lang, as a community and as parents of the minor children R.L and C.L.

2.      Plaintiffs sued Defendants here because, due to actions by and omissions by employees

of the  State of Washington,  County of Clark, City of Vancouver, Cowlitz County, City of

Kelso, and Legacy Salmon Creek Hospital, Legacy Salmon Creek Hospital employee

Kimberly Copeland MD, and  CASA Agent, Kathy Shirilla.

3.       Department of Social and Health Services (DSHS) and the Washington Attorney

General's, County of Clark, City of Vancouver, Cowlitz County, City of Kelso, and Legacy

Salmon Creek Hospital, Kimberly Copeland MD and  CASA, Kathy Shirilla, Agent,

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

~~who~~ ignored their legal obligations caused Plaintiffs' loss of comfort, love, care, and companionship of their children who have special needs, were neglected, and abused in foster care for 425 days.

Defendants acted under color of law with the authority of a state, in accordance with the policies, customs, and practices of that agency. Instead of honoring familial relationships as required, Defendants, deprived Plaintiffs of their right to due process under the United States Constitution and the Washington Constitution; negligently removed the children from a non-abusive home and placed them in abusive homes; committed fraud; defamed Plaintiff Joanna Lang; wrongfully caused the death of Dick Lang; unlawfully discriminated against the Plaintiffs based on race <u>and disability</u>; and engaged in illegal racketeering. All these actions resulted in irreparable injury to Plaintiffs.

## II.    JURISDICTION AND VENUE

4.    Plaintiffs filed the required claim forms with the Office of Risk Management and waited sixty days before commencing this suit as required under RCW 4.92.100 and 4.92.110. Exhibits A, B,C & D.

5.    The Office of Risk Management and the Attorney General are required to collaborate in the investigation, denial, or settlement of such claims. RCW 4.92.210. To date, the State of Washington has not communicated with the Plaintiffs to resolve Plaintiffs' claims. Having no prospects of resolution from the State of Washington, Plaintiffs filed this lawsuit.

6.    Plaintiffs allege violations of their state and federal constitutional due process rights, 42.U.S.C. § 1983; negligent investigation causing exposure to neglect and maltreatment, RCW 26.44.050; fraud; defamation; wrongful death, RCW 4.20.010; discrimination, 42 U.S.C. § 2000d et seq., RCW 49.60.030; civil violation of the Racketeer Influenced and Corrupt

COMPLAINT - 5

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

Organization (RICO) Law, 18 U.S.C.§§ 1961-1968. Plaintiffs seek damages and injunctive relief.

7.      All acts by the Defendants arose in Clark and Cowlitz Counties in Washington within the jurisdiction of this Superior Court. Upon information and belief, all Defendants are located, reside, or do business in Washington, and all the events or omissions giving rise to Plaintiffs' claims occurred in Washington.

### III.     PARTIES

8.      At all relevant times, Plaintiff Joanna Lang, who is the personal representative of the estate of her late husband Dick Lang and the mother of the minor children C.L. and R.L., resided in Vancouver, Clark County, Washington.

9.      Defendant Clark County is a local government entity in the State of Washington.

10.     Defendant Cowlitz County is a local government entity in the State of Washington.

11.     Defendant City of Vancouver is a municipality in the State of Washington.

12.     Defendant City of Kelso is a municipality in the State of Washington.

13.     Upon information and belief, at all relevant times, Defendant Cheryl Strange ("Strange") was Secretary of DSHS, located in Olympia, Washington, acting under color of law in accordance with DSHS practices and customs, and exercised ultimate supervisory power over all DSHS employees reside in Washington state. Strange had final responsibility for all policies, practices, and decisions of DSHS.

14.     Upon information and belief, at all relevant times, Defendant David Stillman ("Stillman") was DSHS Assistant Secretary of the Economic Services Administration (ESA) at DSHS. At all relevant times, Stillman was acting under color of law in accordance with the

COMPLAINT - 6

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

policies of DSHS, was working under the direction of Defendant Strange, and was exercising power granted to him by virtue of his work for DSHS and Strange.

15.    Upon information and belief, at all relevant times, Defendant Dana Phelps ("Phelps") was DSHS Assistant Secretary of Services and Enterprise Support (SESA). At all relevant times, Phelps was acting under color of law in accordance with the policies of DSHS, was working under the direction of Defendant Strange, and was exercising power granted to her by virtue of her work for DSHS and Strange.

16.    Upon information and belief, at all relevant times, Defendant Terry Redman ("Redman") was DSHS Interim Director of Vocational Rehabilitation Services. At all relevant times, Redman was acting under color of law in accordance with the policies of DSHS, was working under the direction of Defendant Strange, and was exercising power granted to him by virtue of his work for DSHS and Strange.

17.    Upon information and belief, at all relevant times, Defendants Jane and John Does 1 through 10, to include but not limited to ~~as well as~~ Area Administrator Beth Kutzera, Jennifer White, Supervisor, CPS Investigators, Kaytena Gonzalez, Janelle Redmond, Pamela Williams, Loraine Martinez, CSWS Social Workers, Jaimee Scheffler, and Aaron Merino, and Sarah Coslow, Case Worker for C.L. were employees or agents, acting under color of law in accordance with the policies of DSHS, were working under direction of Defendant Strange, Stillman, Phelps, and Redmond and were exercising power granted to them by virtue of their work for DSHS.

18.    Upon information and belief, at all relevant times, City of Vancouver Law enforcement employees,  Officer Michael Clylack, Approving Officer, Officer Timothy Lear, Reporting Officer and Jon Pfister, Reporting Officer,  Officer Goudschaal, Assigned Officer, in their

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

collective capacity and as municipal employees, acted with authority granted to them by Clark County, City of Vancouver and had final policy making authority or the ability to ratify a subordinate's actions.

19.     Upon information and belief, at all relevant times, C. Solis, Sargent Troy Brightbill, Responding and Reporting Sargent and Deputy J Hammer, Responding Deputy are municipal employees of Cowlitz County and acted with authority granted to them by Cowlitz County, City of Kelso and had final policy making authority and the ability to ratify a subordinate's actions.

20.     Upon information and belief, at all relevant times, Defendant Dan Hsieh ("Hsieh") was an Assistant Attorney General for the Washington State Attorney General's Office (AG). At all relevant times Hsieh was acting under color of law in accordance with the policies of the AG, was working under the direction of the AG, and was exercising power granted to him by virtue of his work for the AG.

21.     Upon information and belief, at all relevant times, Defendants Steve Vallembois ("Vallembois") and Jimmy Howard ("Howard"), former foster care parents of R.L., resided in Vancouver.

22.     Upon information and belief, at all relevant times, Eimiko Murlin and Jeff Ian Murlin (the "Murlins"), former foster care parents for C.L., resided in Kelso, Washington.

23.     Upon information and belief, at all relevant times, Kimberly Copeland, MD is an employee of Legacy Salmon Creek Hospital on the Child Abuse Assessment Team involved in the investigation with the city of Vancouver and DSHS.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

24.     Upon information and belief, Kathy Shirilla is an agent of CASA providing court appointed guardian ad litem services with a fiduciary duty toward R.L. and C.L. was involved in the investigation with the city of Vancouver and DSHS.

25.     Plaintiffs are informed and believe, and thereupon allege, that each of the individual Defendants knowingly and willingly, acting under color of law, individually and collectively, did injure Plaintiffs, and deprived Plaintiffs of their rights, liberties, and interests in the comfort, care, and association with their children C.L. and R.L., as such rights are afforded them under the Washington State Constitution, Washington statutory law, and the United States Constitution, and conspired generally to damage Plaintiffs and inflict great injury upon them.

26.     Plaintiffs are informed and believe, and based upon such information and belief, allege that, at all times mentioned herein, the above-mentioned individual defendants (collectively, "DSHS Workers") and each of them, were acting within the scope of their employment and under color of law. Defendants DSHS Workers were in their collective capacity and as individuals, acted with authority granted to them by DSHS, Clark County, City of Vancouver, Cowlitz County, City of Kelso, Legacy Salmon Creek Hospital, and CASA.

## IV.     STATEMENT OF THE CASE

27.     The Washington Legislature has declared that the family unit is a fundamental resource of American life which should be nurtured. RCW 13.34.020. Under this guiding principle, "the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized." *Id*. Furthermore, "the bond between a child and his or her parent . . . is

COMPLAINT - 9

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent." RCW 26.44.010.

28.     For over 30 years, Dick and Joanna Lang opened their hearts and home to adopt minority special needs children because that was their calling. The Langs felt that too many minority special needs children go unclaimed. In 2013, Dick and Joanna adopted R.L. and C.L. into their home, a loving and nurturing environment that was in the best interests of the children.

29.     The Defendants destroyed the Langs' stable and nurturing home environment on the night of February 3, 2017, under color of law and without justification, when they seized the Langs' children, placed the children in separate foster homes where they were abused and neglected, and kept them away from the Langs for 425 days.

## V.     FACTUAL ALLEGATIONS

30.     Dick and Joanna Lang adopted C.L. and R.L. in 2011 and 2013 respectfully. The Langs are white and Jewish. C.L. and R.L. are minority children with special needs. C.L., who was born in 2011, suffers from Fragile X syndrome. R.L., who was born in 2003, suffers from intellectual disability. Exhibit E.

31.     On January 4, 2017, and February 1, 2017, DSHS Child Protective Services (DSHS-CPS) received telephone referrals alleging that the Langs mistreated R.L. The telephone referrals were from Holly Lang, a mentally ill family member.  Exhibit 1, Intake # 3534736, Exhibit 2.

32.     In 2012 Holly Lang was suicidal very animated, screaming very loudly that there the demons in her head were going to make her do bad things. Holly Lang started hitting herself in the head with her fists and she screamed the demons were going to get her and she needed

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

to get out of her. She also stated she would kill herself to get away. Holly Lang's incompetence became official in October of 2017. Exhibit    1. City of Vancouver Law enforcement employees,  Officer Michael Clylack, Approving Officer, Officer Timothy Lear, Reporting Officer took the report.

33.    Holly Lang's incompetence was never mentioned by the DSHS,  City of Vancouver, law enforcement, who knew or should have known, about this crucial information and was were in charge of  the investigation into the Langs. Aand Jennifer White Supervisor, who authored and published the final decision of DSHS-CPS regarding the issue of negligent or maltreatment, never mentioned that Holly Lang  was incompetent or her mental issues. Exhibit 2. Holly Lang was the only witness with personal knowledge of the events that occurred on January 4, 2017, and February 1, 2017, referral #3534736. Dan Hsieh, AAG,  never called Holly Lang to testify at the dependency hearing.

34.    Vancouver City Police Officer Kim Holland Jon Pfister, Reporting Officer,  assigned the investigation of  intake referral # 3534736 to Officer Goudschaal. The intake police report was dated February 3, 2017, the same day that R.L. and C.L. were taken from their home. Officer Goudschaal along with and Kaytena Gonzalez, monitored the interview conducted by forensic interviewer Kim Holland, of the Child Justice Center (CJC), interviewed with Holly Lang by telephone that was recorded (audio and video) on March 16, 2017 at 1030 hours. but when Officer Goudchaal  followed up the investigation over the next several weeks.  Holly Lang stated that "she did not want to cooperate" with the investigation. A DSHS Worker Kaytena, Gonzalez, CPS Investigator  followed up with her Officer Goudchaal with numerous emails. Officer Goudchaal reported that the emails are potentially important for background information for this case but had no evidentiary value to this case. from but later informed

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

~~Officer Holland~~ Goudschaal ~~that Holly "was not comfortable with cooperating" with law enforcement.~~ Exhibit 3.

35.    The DSHS-CPS Investigator ~~worker~~ Kaytena Gonzalez provided Officer ~~Holland~~ Goudschaal with contact information for other Lang family members, Random Lang, and Wendy Lang, whom she indicated may have had recent contact with R.L. Officer ~~Holland~~ Goudschaal was unable to reach them. Officer ~~Holland~~ Goudschaal attempted to contact Wendy Lang on several occasions but was unable to determine her location. Id.

36.    Wendy Lang, who also resides in Montana, was not in Washington between January 4, 2017 and February 1, 2017, making her, like Holly Lang, an incompetent referent regarding conditions in the Lang home at those times. Based on these records, the DSHS-CPS Investigator ~~Workers~~ Kaytena Gonzalez and Vancouver Police Officer Goudschaal ~~Department~~ knew that Wendy Lang was ~~the witnesses were~~ not an eyewitness to the conditions in the Lang home or the treatment of R.L. Id.

37.    Officer ~~Holland~~ Goudschaal reported that there appeared to have been an initial concern by several family members regarding R.L., but that Officer ~~Holland~~ Goudschaal was unable to elicit any cooperation from them. Id. C.L. was not mentioned. At this point, Officer Goudchaal ended his involvement in the case and Jon Pfister approved the report and referred the case to CJC prosecutor for review and/or charging, thus closing the investigation on March 8, 2017.

38.    On February 2, 2017 CPS Investigator Kaytena Gonzalez and an armed uniformed police officer appeared at the Langs front door.  The Officer spoke with R.L. and did not take him into protective custody. *See* Exhibit 5, Lang Declaration.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

39.    When leaving the Langs home, CPS Investigator Kaytena Gonzalez handed Ms. Lang a note demanding that Ms. Lang take R.L. to Legacy Salmon Creek ER for a full checkup. Ms. Lang complied. *See* Exhibit 5, Lang Declaration.

40.    Plaintiff Joanna Lang took R.L. to see his regular pediatrician, Dr. Charles Fuchs, on February 2, 2017. Dr. Fuchs did not report any issues with R.L. The DSHS knew about this visit. *See* Joanna Lang Affidavit ¶¶ 11-13. Exhibit 5. In fact, Dr. Fuchs discussed R.L's weight issues. Exhibit 6. Dr. Fuchs possesses sufficient medical expertise to recognize a child who is suffering from negligent treatment or maltreatment. In fact, Dr. Fuchs observed that R.L. was smiling, had more visual interaction between R.L. and Mom and more conversation with both Dr. Fuchs and Mom that he had experienced in the past. R.L. was alert and active, despite his alleged malnutrition. In addition, R.L. was now gaining weight. Id. ¶12, 13.

41.    Dr. Fuchs told Pamela Williams, CPS Social Worker in a follow up telephone call that there was no signs of  negligent treatment or maltreatment. Id. ¶ 11.  Home School Legal Defense Association (HSLDA) emailed the results of the medical report to AAG Daniel Hsieh. Id at ¶ 10.

42.    On February 3, 2017, Assistant Attorney General Hsieh filed for an ex-parte motion and order to remove R.L. from his parents, supported by declarations from DSHS Workers Kaytena Gonzalez Exhibit 9 & 10.  Later, C.L. was added to the motion. Exhibit 11. However, the order did not give law enforcement or Kaytena Gonzalez or Jay Redmond the authority to enter the Langs' home or search the premises and take property.  At the time of the ex-parte pick up order ~~was signed motion~~, Hsieh, Gonzalez  and law enforcement  knew about the February 2, 2017 visit from law enforcement and Gonzalez.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

43.    On Friday, February 3, 2017 at 7 p.m., there was a knock on the Langs' door.  Ms. Lang looks out the window and saw four armed uniformed VPD police officers (like a S.W.A.T. team) talking loudly and moving about. The Officers kept banging on Ms. Langs front door. Ms. Lang called HSLDA again HSLDA's Attorney spoke to CPS Investigator Kaytena Gonzalez. Id at ¶ 22. Kaytena Gonzalez handed Ms. Lang a large envelop with papers inside.  Law enforcement  or DSHS-CPS Investigators, Kaytena Gonzalez or Jay Redmond never asked to have the Joanna Lang to bring R.L. or C.L. to the door to see that there was negligent treatment for maltreatment or imminent danger  like the unknown VPD Police Officer who accompanied Gonzalez to the Lang home on February 2, 2017, who observed and spoke to R.L., and decided not to take R.L. into custody.   Id. ¶24.

44.    Since law enforcement did not have or could not obtain a warrant considering the February 2, 2017 visit, the Langs did not let them in her home and asked them to leave.   When leaving, one VPD Officer shouted, "*I'll go get a warrant" and then I will come back…I'll kick your door down".* This remark was heard by HSLDA because he was still on the phone.  Out of fear and intimidation, Ms. Lang let them into her home where the 4-armed VPD Police Officers,(one female) and 3 CPS-Investigators Kaytena Gonzalez, Jay Raymond and Loraine Martinez started to search and took  photos then seized R.L. and C.L. Id. ¶ ¶ 26, 27, 28. CPS Investigators made Ms. Lang pack her son's belongings; diapers, medical formula, special diet foods, bedding, clothing and C.L.'s "Gigi". (teddy bear). Id. at  ¶ 30. Ms. Lang had her Pentax Camera at the end of the counter, and she turned the camera on. Kayenta Gonzalez turned it off, then grabbed food out of the refrigerator for R.L. When all this was going on, the Police Officers and a CPS Social Worker Loraine Martinez stood by the chase lounge by R.L.'s door then started to round up R.L.'s things. It was frosty outside and R.L. complained of being cold.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

Ms. Lang told Kaytena Martinez to put on his coat, Martinez just grabbed more of R.L.'s belongings after Ms. Lang said no, you cannot take those. Id. ¶ 30.

45.     CPS Investigator Kaytena Gonzalez was holding C.L.'s medical formula bottle, Ms. Lang had a hold of it too. Martinez told Ms. Lang to take her hand off the bottle or she would charge her with felony assault if she tried to take the bottle. Ms. Lang *begged to let C.L. have his bottle it would comfort him.*  Law enforcement was right behind Martinez, so Ms. Lang let the bottle go. ¶ 32

46.     CPS Investigator Janell Redmond carried C.L. out the door.

47.     DSHS ~~CPS Investigators Workers~~ along with VPD Law Enforcement ~~also~~ took C.L. and R.L. to Legacy Salmon Creek Medical Center ~~in~~  for a "child abuse specific" examination by Dr. Tam Voung on February 3, 2017, although neither child had any signs of abuse or serious bodily injuries or any other medical concerns. Dr. Voung determined that both C.L. and R.L. were safe to return home.  Exhibits 7 & 8.

48.     The medical reports show that one of the DSHS ~~CPS Investigators Workers~~ told Dr. Voung that Joanna Lang had "mental" problems and possible neglect in caring for R.L. and C.L." Id.

49.     On February 3, 2017, the same day that C.L. and R.L. were snatched from their home, DSHS-CPS Investigator ~~Workers~~ Kaytena Gonzalez reported Joanna Lang to Adult Protective Services (APS) for alleged abuse of her husband Dick Lang. But APS closed the file after deciding that there was no abuse and Mr. Lang did not meet legal criteria of a vulnerable adult. Exhibit 12. Later, on June 11, 2018, the Prosecutor's Office found that there was insufficient evidence to pursue successful prosecution against Joanna Lang for abuse of Dick Lang. Exhibit 13.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

50.     On February 5, 2017 Gonzalez arrived at the Langs' front door again and handed Joanna Lang two smaller envelope. Inside was a brief letter/note about Family Team Decision Meeting (FTDM) the next morning.

51.     On February 6, 2017 Joanna Lang learned about the 72-hour Shelter Care Hearing that was supposed to convene on February 7, 2017. She did not received notice of this hearing. She was never advised of the purpose of the hearing, any rights, or that they could speak.   Ms. Murlin, C.L.'s foster parent was at the meeting.

52.      Dr. Kimberly Copeland is an employee of Legacy Salmon Creek Hospital and was involved in the investigation with DSHS-CPS and law enforcement. She is a member of the Child Abuse Assessment Team (CAAT) the Vancouver Police Department pursuant to a Clark County contract to provide forensic medical services to DSHS clients. She evaluated R.L. ion March 7, 2017. Exhibit 14. Dr. Copeland's report indicated that R.L. gained 24 pounds in one month after he was removed from the Langs' home. *Id*. Gaining weight is consistent with Dr. Fuch's observations that R.L. was gaining weight from his February 2, 2017 visit, but Dr. Fuchs allowed R.L. to leave with his Mother.   The report also stated that R.L. disclosed being isolated in his bedroom daily, having to obtain permission and being escorted to the restroom, having accidents due to the bathroom requests not being attended to, daily hunger, and reduction in food portions. This part of Dr. Copeland's report conflicted with Dr. Fuch's February 2, 2017 examination of R.L. and Dr. Vuong's February 3, 2017 "child abuse specific" medical examination at Legacy Creek Medical Hospital of both R.L. and C.L. and opined that the children were safe to return home.   report regarding R.L.  she Kimberly Copeland, MD did not evaluate C.L.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

53.     Dr. Copeland's report concluded that Joanna and Dick Lang failed to act in R.L.'s best interests, failed to provide for R.L.'s needs, and showed a serious disregard for consequences to R.L. of such magnitude that it created clear and present danger to R.L.'s health, welfare, and safety. Dr. Copeland concluded that R.L. had been exposed to negligent treatment and maltreatment. *Id.* This is also inconsistent with two medical reports from Drs. Fuchs and Vuong a month prior. Officer Goudshaal took the entire contents of this record and scanned them into a portable document format (PDF). *See* Exhibit 2

54.     DSHS social workers, placed R.L. with Defendant foster parents Vallembois and Howard on February 3, 2017. On February 5, 2017, Howard stripped searched R.L. looking for injuries or bruises even though Howard knew that R.L. had undergone a child abuse specific exam two days prior on February 3, 2017 Sarah Coslow was the Case Manager.

55.     One evening at a restaurant, while R.L. was living in the foster home, Vallembois shouted at R.L., "If you were my kid,  I would slap the shit out of you!"

56.     On another occasion DSHS Foster Parents, Vallembois, and Howard led R.L. to believe that he was going to a camp for foster kids. Vallembois and Howard took R.L. to Dr. Eisenfeld who gave R.L. a shot before camp without Ms. Langs permission. Later, R.L. found out that the camp was for children or family members with AIDS or HIV. Neither R.L. nor the Lang family have AIDS or HIV. Exhibit 15.

57.     On March 30, 2017 Dan Hsieh, AAG motions to suspend all visits with R.L. and C.L. and their "Therapeutic" visits with the Langs. CFWS Aaron Merino and/or CFWS Jaimee Scheffler were supposed to set these up the visits. These visits never happened.  R.L. asked for more visits and to see his brother C.L. but the CFWS Aaron Merino and/or CFWS Jaimee Scheffler  did not provide the visit between the brothers.   R.L. also indicated that he wanted

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

to go home at the 6/9/17,  Aaron Merino and/or CFWS Jaimee Scheffler did not record the request. *See* Declaration of Joanna Lang, Exhibit 5 ¶s 57,58,59, 60,61.

58.    Kathy Shirilla, Agent of  CASA was the appointed guardian et litem for the Lang children. She agreed with the state's position and the Langs visitation with their children was cut in half.

59.    In a DSHS-CPS decision on April 3, 2017, DSHS-CPS supervisor Jennifer White concluded that Joanna Lang had negligently treated, and maltreated R.L. Ms. White's decision never mentioned C.L. Nor did it mention the incompetence of the referent, opinions from Dr. Fuchs and Dr. Vuong that there was no maltreatment and that the children were safe to go home on February 3, 2017. Exhibit 2.

60.    DSHS Workers Area Administrator Beth Kutzera, or Jennifer White, Supervisor, entered this erroneous decision about the Langs into the DSHS Case Management Information System (CAMIS), which made Plaintiffs' ineligible to adopt or provide for minority special needs  foster care to children.

61.    Meanwhile, DSHS social workers placed C.L. with the Murlins. Sarah Coslow was the Case Manager. The Murlins left C.L. and other foster children unsupervised when an 8-year-old foster child started a fire that burned the Murlins' home. Because of the fire damage, C.L. had to reside with the Murlins and other foster children (at least six other people in total) in motor homes and R.V. where the living space requirements fell well below the standard required by WAC 110-148-1470, even allowing for emergency accommodation conditions. Exhibit 16. ~~DSHS Workers~~ Sarah Coshow, Case Manager and Sargent Troy Brightbill,  Deputy J. Hammer, Cowlitz County Sheriffs  saw that C.L. was warehoused in an R.V. in overcrowded conditions and did not act to protect C.L.  Sargent Brightbill's report was information only and

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

requested a copy be forwarded to Cowlitz 2 Fire Rescue. Deputy J Hammer found no abuse and declared his investigative file inactive.

62.    Plaintiff Joanna Lang became afraid that the Murlins were going to kill C.L. Ms. Lang sent out a request for review of the placement to DLR/CPS. Ms. Lang reported C.L.'s abusive situation to Cowlitz County Sheriff's office on September 13, 2017.  The report was received by Deputy J Hammer.  Sarah Coshow investigated. After her investigation, she indicated to Deputy J Hammer that it appeared that the only concern was the bio-parent of the victim (Ms. Lang) was potentially looking to fault CPS for negligence regarding the safety of the placement of C.L.

63.    Ms. Lang also reported two separate incidents where they had visitation (11/21/17 and 11/29/17) and she described substantial injuries on C.L. The Report was received by Deputy J. Hammer who responded and was the responsible law enforcement.  Ms. Lang attempted to get help from DSHS and Deputy J Hammer, but her reports were either unanswered or dismissed and the investigation of J Hammer found no abuse.  ~~Ms. Lang again reported child abuse on~~

64.    With no help, from Sarah Coshow,  Sargent Brigthtbill, or Deputy Hammer, Ms. Lang hired a private investigator (Laura Anderson) to investigate the Murlins. *See* Lang Declaration ¶s 68,69,70.  Laura Andersen's report dated December 9, 2017.  Exhibit 16-A.  Laura Andersen's, Investigation became public information because it was filed with the Superior Court. It reported ~~indicated~~ that the Murlins were observed traveling over 80 to 90 miles per hour with C.L. in the automobile as well as pictures of mobile homes not in compliance with the space requirements of DSHS regulations.  Exhibit 16A. DSHS-CPS Sarah Coshow, Case

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

1
2

Manager did not mention the policy violations or Laura Anderson's report during her investigation.

3
4
5
6
7
8
9
10

65.    The report also had photographs of C.L. by Ms. Lang during DSHS visitations ~~taken~~ during his residence with the Murlins. The photographs revealed C.L.'s bones protruding from his chest, ribs, and back, along with numerous other injuries. Exhibit 16, pgs., 3,4,5. But Sarah Coslow had no concerns with C.L.'s safety and Sargent Brightbill or Deputy J Hammond never followed up on Ms. Langs complaints, or  the independent investigative report and Deputy J Hammer found no abuse.

11
12
13
14
15
16
17
18
19

66.    Additionally, during the time that C.L. ~~he~~ was removed from his parents,  Terry Redman ("Redman") was DSHS' Interim Director of Vocational Rehabilitation Services, CFWS Aaron Merino and/or CFWS Jaimee Scheffler failed to provide C.L. ~~should have received~~ with a wheelchair. Instead, the Social Workers gave C.L.'s wheelchair to a Caucasian child. Either way, C.L. never got the wheelchair.  Additionally,  Dr. Fuchs proscribed a Guide Dog to help C.L. to deal with the recent emotional trauma, to date C.L. never received ~~it. C.L., also never received a~~ the Guide Dog as ~~recommended~~ prescribed by Dr. Fuchs. Exhibit 18.

20
21
22

67.    On May 21, 2018, the Honorable Scott A. Collier denied the State's Dependency Petition and R.L. and C.L. It was filed on May 22, 2018. Exhibit 19.

23
24
25

68.    R.L and C.L. were reunited with their parents on April 4, 2018, 425 days after DSHS removed.

26
27

69.    Sadly, on June 30, 2019, Mr. Lang succumbed to the stress of the ordeal and passed away. Exhibit 20.

28
29

## VI.    VIOLATION OF STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS RIGHTS, TITLE 42 U.S.C. § 1983

30

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

70.    Plaintiffs hereby incorporate all the allegations set forth in above in the paragraphs above as if set forth fully herein.

71.    It is alleged that the City of Vancouver is liable under § 1983 for deprivations of the constitutional rights of Langs whose children were removed from their homes because of the city's policy of resolving ambiguities in child abuse investigations in favor of finding that abuse occurred despite exculpatory evidence that there were no ambiguities because the referent was incompetent, did not want to participate in the investigation, and two independent medical opinions that stated the children were safe to return home on the same day they were taken, February 3, 2017.

72.    There are three ways a municipality can be found liable under § 1983. 1) with the implementation of official policies or established customs inflicts the constitutional injury; 2) identifying acts and/or omissions, such as a pervasive failure to train the municipality employees that are so widespread and so permanent and well settled as to constitute a custom and usage with the force of law; 3) when the person causing the violations has "final policy making authority" or "if the final policy maker ratified a subordinate's actions."

73.    At all relevant times, the City of Vancouver employees Officer Michael Clylack, Approving Officer, Officer Timothy Lear Reporting Officer responded to a call involving Holly Lang in 2012 where her incompetence was demonstrated. Holly Land was declared incompetent in December 28, 2017. *See,* Exhibit 1.

74.    It is alleged that Jon Pfister, Reporting Officer and Approving Officer and Officer Goudschaal Assigned Officer were involved in the February 3rd, 2017 investigation regarding the Langs. It is alleged that Jon Pfister, Reporting Officer assigned four armed officers to

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

respond to a report of child abuse-neglect on February 3, 2017 at the Langs' home.  It is alleged that Joh Pfister gave the go ahead to respond to the Langs' home.

75.      It is also alleged that Jon Pfister knew that Holly Lang (the Referent) was incompetent because of the 2012 police report taken by Officer Michael Clylack, Approving Officer, Officer Timothy Lear Reporting Officer because it is custom and practice to pass on reports so a responding officer would know what he is dealing with if a future report involved Holly Lang was reported for officer safety.

76.      It is alleged that Joh Pfister, Approving Officer and Dustin Goudshaal, Assigned Officer and the four-armed police who went to the Langs home February 3, 2017 without a warrant, ~~were employed by DSHS~~, ~~They~~ acted within the scope of their employment, consistently with the implementation of official policy and custom of finding child abuse in child cases  and thus were acting under color of law.

77.      At all relevant times, Defendants Strange and the DSHS Workers acted pursuant to the policy of finding abuse in child abuse referrals, and thus were acting under color of law, within their scope of their employment, consistently with the DSHS custom and policy.

78.      It is alleged that the actions of the DSHS Workers individually and in concert, supported, aided, encouraged, reinforced, and protected the actions of other Defendants. Namely, the City of Vancouver law enforcement, CASA, Agent Kathy Shirilla and Kimberly Copeland, MD employee of Legacy Salmon Creek Hospital "Legacy" acted in concert in the deprivation of the Langs constitutional rights to be free from abusive government intervention.

79.      It is alleged that all Defendants suppressed exculpatory evidence from two Doctors dated February 2, 2017  and February 3, 2017, that concluded that R.L. and C.L. were safe to return home the day they were taken, and the same day the police report was reported which

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

caused the constitutional deprivation of the Langs constitutional rights of familial association without abusive government intervention.

80.     It is alleged that this conduct and/or omissions was a pervasive failure to train municipal employees and the policy of finding abuse in child abuse referrals was so well settled as to constitute a custom and usage with the force of law when Jon Pfister, Reporting Officer and Officer Goudschaal Assigned Officer were involved in the February 3rd 2017 investigation and the 4-armed Vancouver Police along with 3 CPS Investigators Gonzalez, Martinez, and Redmond entered the Langs home without a warrant, but with treats and intimation, "*I'll go get a warrant" and then I will come back…I'll kick your door down"* seized the C.L. and R.L. and took property from the Langs home on February 3, 2017.  ~~Additionally, at all relevant times Defendant Hsieh was employed by the AG, acted within the scope of his employment, and thus was acting under color of law.~~

81.     It is alleged that their constitutional deprivations went on for 425 days and involved municipal employees Jon Pfister, Reporting Officer,  Officer Goudschaal, Assigned Officer and the 4-armed Vancouver Police had final decision-making authority and/or Jon Pfister, Reporting Officer ratified their subordinates' actions at the time the decisions were made despite exculpatory evidence.  ~~These~~ constitutional ~~depravations were so~~ It is widespread ~~and because it involved State Workers, law enforcement personnel~~

82.     At all relevant times, the law enforcement along with Defendants DSHS Workers, and Kimberly Copeland, MD, and Kathy Shirilla and Hsieh, acting individually and in concert, to deny Plaintiffs' rights guaranteed under RCW 26.44.010 when they seized the children, because their conduct interfered with the bond between a child and his or her parent, when they relied on incompetent evidence from Holly Lang to create child abuse.  The incompetent

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

referent who did not want to participate in the investigation and the exculpatory evidence of no neglect or maltreatment of R.L. and C.L.,  they acted consistently with their policy and custom of finding abuse in child abuse cases that was so widespread and permanent and well settled as to constitute a custom and usage with the force of law.

83.     It is alleged that Joh Pfister, Approving Officer, CPS investigators, Agents, and Dan Hsieh made the final policy decision or ratified the subordinates' acts and omissions with inflicted constitutional violations because those decisions resulted in a harmful placement decision for C.L. and R.L. which interfered with the bond between R.L. and C.L. and Dick and Joanna Lang. RCW 26.44.010.

84.     In a manner that shocks the conscience, Vancouver law enforcement and the Defendants,  DSHS employees violated Plaintiffs' substantive due process right to be free of abusive and oppressive government actions when 4-armed law enforcement officers (S.W.A.T) and 3 DSHS/CPS Investigators intruded on Plaintiffs' home and unjustifiably seized R.L. and C.L. from the Langs safe environment and placed them in separate abusive environments while adhering to the established custom an policy of finding abuse in child abuse cases that had the force of law,  based on a referral from an incompetent referent who did not want to participate in the investigation.  Then the Vancouver law enforcement and DSHS employees ignored exculpatory evidence from two medical professionals, threatened and intimidated the Langs to gain access to their home to seize the children and property, ignored the fact that law enforcement and Gonzalez was at the Langs' home on February 2, 2017 but did not take R.L. into protective custody because there was no signs of maltreatment, negligent treatment, or imminent danger,  which culminated in the unwarranted interference

COMPLAINT - 24

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

in the Langs familial relationships, regardless of whether that interference can be described as shocking to the conscience.

85.     As a direct result of these actions, by all Defendants, Plaintiffs have suffered substantial damages. Joanna and Dick Lang lost the ability to raise, know, bond, and care for their children for 425 days, damaging their familial relationship and exposing the children to abuse and neglect in foster homes. Additionally, because of the intense stress of this ordeal, Dick Lang passed away on June 30, 2019.

86.     It is alleged that C Solis received and Sargent Brightbill, responded and assisted in a fire investigation at the Murlins home on 7/18/2017 after the Murlins left children unsupervised and one started a fire in the home. Both employees of Cowlitz County, City of Kelso ignored over crowed conditions at the Murlins (six children in a motor home and R.V.) one with special needs. Sargent Brightbill responded and assisted and had the final decision-making authority did not investigate but referred the case to the fire department. It is alleged that this a failure to train municipal employees to spot child abuse (i.e., fire and overcrowded conditions).

87.     It is alleged that Deputy J Hammer, law enforcement of Cowlitz County, City of Kelso, received, responded to, and investigated child abuse at the Murlin's home.  Deputy J Hammer received several reports from Joanna Lang. The first on 3-12-17 skinned knees,  on  3/29/17 Ms. Lang reported puncture wounds on the upper right thigh near his diaper on 4-26-17 bruising near his spine, 6-28-17 bruising on his leg and dried blood in this shoe. She suspected that C.L. was being restrained around his ankles at bedtime due to the marks she observed on his ankles. On 9/18/2017 after a supervised visit with C.L., Ms. Lang reported that C.L. was unusually skinny, that he rapidly ate a bag of snacks. She suspected starvation. She also

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

reported a round burn mark on his lower back at the top of his buttock crack. She reported these injuries to law enforcement after C.L. began living with the Murlins.

88.     Law enforcement investigating such reports is authorized to photograph the victim for the purpose of providing documentary evidence of the physical condition of the child. RCW 26.44.050.  Here, Deputy  J. Hammer took no photographs of the injuries that were reported on C.L. This act or omission is a pervasive failure to train the municipal employees so widespread as to constitute the force of law.  This omission caused the further constitutional derivation of C.L.' right to be placed  in a safe environment free from abuse and neglect. Deputy J Hammer's omission prolonged C.L.'s detention in an abusive environment.

89.      It is alleged that Deputy J Hammer did investigate but relied on Sarah Coshow, DSHS Case Manager  who determined that the living conditions to be fine and that the suspected cigarette burn was a bug bite, (i.e., fire in the home), that C.L was taken to the doctor a week ago and she had no concerns for C.L.'s safety.  Ms. Coslow also advised Deputy J Hammer that Ms. Lang was trying to make things  difficult for the Murlins and this is not her first report of abuse and that she   did not see any reason for them to respond given her observations. Eimiko Murlin also pointed out to Deputy J Hammer that she had to put up a gate so C.L. does not fall out of bed. (i.e., restraints). Deputy J Hammer also spoke with C.L.'s teacher Merissa Cavaness that determined that the suspected burn mark was obviously not a burn mark.  Coslow and J. Hammer knew that C.L. is non-verbal and suffers from Fragile X syndrome so he could not speak for himself. None of the interviewees had medical training to determine what all the marks on C.L.'s body were.  C.L. needed a visit to Dr. Fuchs and Dr. Vuong's because he could not express himself.  His mother tried to do that for him, but to no avail.  Deputy J Hammer had evidence of six people living in two motor homes that did not comply and with

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

state standards, all the reports of abuse from Joanna Lang and he failed to act.  Deputy Hammer knew C.L. is non-verbal because he suffers from Fragile X syndrome and could not speak for himself.  Despite all these reports and the fact that C.L. could not speak for himself, Deputy J Hammer did not to call medical personnel to confirm that C.L. was not being abused, inflicting on the parents' fundamental rights in the care, custody, and management of their child protected by substantive due process under the Fourteenth Amendment.

90.     Sarah Coslow and Deputy J. Hammer's final decision not to call for medical support for C.L.  inflicted constitutional injuries to C.L. and the Lang Family.  It could also be a denial of equal protection of the law and the 14th Amendment of the Constitution because of the race of Ms. Lang (Jewish) and disability of C.L. (Fragile X syndrome).  It is alleged that this is a pervasive failure to train employees practicing a custom and policy so well settled as to constitute a custom and usage with the force of law.

91.     It is also alleged that on or about or after 12/9/2017 Deputy J Hammer and Sargent Brightbill were aware of an independent investigation performed by Laura Anderson that showed the marks on C.L.'s body; the surveillance also informed law enforcement of the risks C.L. was subject to when the Murlins were traveling 80 to 90 miles per hour with C.L. in the car.  Deputy J Hammer  knew that Sarah Coslow did not interview C.L. because he was non-verbal and indicated that she did not feel that the allegations were founded.  After the home and school visits Sarah Coslow did not have any concerns over the referral and there wasn't anything present to warrant or substantiate a criminal investigation. Sarah Coslow's only concern was the bio parent (Joanna Lang)  of C.L. was potentially looking to fault CPS for negligence regarding placement. With all Ms. Lang's abuse allegations reported and pictures of C.L.'s injuries reported and Sarah Coslow determining that there is no need for a criminal

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

investigation, and her only concern was to absolve DSHS of fault, it is alleged that the failure to investigate Ms. Langs reports of child abuse of C.L. was a pervasive failure to train employees that was so well settled as to constitute a custom and usage with the force of law.

92.     Sargent Brightbill, and Deputy J Hammer had the "final policy making authority" and made decision to find no abuse and declare the file inactive.

93.     As a direct and proximate cause, it inflicted constitutional injury on the Lang family until May 21, 2018.

94.     These actions caused mental and emotional damages to Plaintiffs and their children, the likes of which are continuing.

95.     The government intrusion onto the Langs life was the proximate cause to the subsequent harm to the Lang family and the death of Dick Lang. Said conduct was intentionally engaged in with malice and/or with reckless disregard for the rights of plaintiffs, such that an award of exemplary and punitive damages is appropriate.

**VII.     NEGLIGENT INVESTIGATION CAUSING EXPOSURE TO NEGLECT AND MALTREATMENT, RCW 26.44.050**

96.     Plaintiffs hereby incorporate all the allegations set forth in above in the paragraphs above as if set forth fully herein.

97.     RCW 26.44.050 requires law enforcement and employees of the Department of Social and Health Services(DSHS) to use reasonable care when investigating allegations of child abuse.

98.     A negligent investigation claim is available only when law enforcement or DSHS conducts an incomplete and/or bias investigation that resulted in a harmful placement decision.

99.     A harmful placement decision includes removing a child from a non-abusive home and placing a child in an abusive home.

COMPLAINT - 28

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

100.   DSHS and VPD law enforcement  must use reasonable care in investigating a child's living situation before making a placement decision. Additionally, the receipt of a report concerning the possible occurrence of abuse or neglect, the law enforcement agency or the department must investigate and provide the protective services section with a report in accordance with chapter 74.13 RCW, and where necessary  refer such report to the court. However, here it is alleged that the DSHS-CPS, Investigators and VPD Law Enforcement's investigation was bias, incomplete, unreasonable, negligent, and procedurally improper and performed pursuant to a policy and custom of finding abuse in child abuse cases or out of spite, racism, and vindictiveness toward the Langs.

101.   It is alleged that The DSHS Defendants Gonzalez, Redmon and Martinez, followed Gonzalez's lead despite her criminal history, and 4-armed VPD law enforcement officers, removed the children from a non-abusive home and placed them in abusive homes of the Murlins foster parents for C.L. and Vallembois, and Howard, foster parents for R.L when they all had in their possession exculpatory evidence from Dr. Fuchs and Dr. Vuong from February 2, 2017 and  February 3, 2017 where they found no negligent treatment or maltreatment and that the children were safe to return home,  but DSHS and law enforcement removed the children anyway. No reasonable social worker or law enforcement officer would have believed it was lawful to remove the children given the exculpatory evidence. The Social workers and law enforcement's concealment of  material evidence caused the harmful placement decision. The suppression of exculpatory evidence is a failure to exercise slight care and therefore grossly negligent conduct.

102.   It is alleged that the CPS Investigators and law enforcement seized C.L. and R.L. from their home based on a mentally ill and incompetent referent who did not want to participate in

COMPLAINT - 29

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

the investigation and witnesses who were not in Vancouver on January 1 and 4 2017 <u>and in</u> <u>disregard of medical examinations by two doctors who found no evidence that R.L. and C.L.</u> ~~the children~~ were being abused, seized R.L. and C.L. without a warrant contrary to RCW 26.44.050 the 14th amendment to the Constitution.

103.    It is alleged that ~~The~~ Defendant social workers ~~for the State of Washington~~ and 4 armed ~~the~~ City of Vancouver police officers without a valid warrant, nonetheless appeared at the Langs home on multiple occasions and ultimately caused their children to be from the home for 425 days, without good cause, <u>despite a determination of no imminent danger on February</u> <u>2, 2017 when a uniformed police officer and a CPS Investigator Gonzalez spoke to R.L.</u> <u>assessed the situation and did not to take R.L. into protective custody.</u>

104.    <u>It is alleged that three</u> Social workers and the four-armed City of Vancouver law enforcement returned on <u>February 3, 2017 without a warrant and used intimidation and threats,</u> "<u>*when I come back with a warrant, I'll kick your door down*</u>" to gain access into the Langs home. <u>Warrantless searches and seizures are per se illegal.  No reasonable social worker or</u> <u>law enforcement officer would have removed  the children in violation of the law and knowing</u> <u>that there was no imminent danger to the children. Defendants' adherence to its custom and</u> <u>policy of finding child abuse in child abuse cases made the investigation bias and unreasonable</u> <u>which proximately caused the removal of the children from a safe home to an abusive one.</u>

105.    <u>It is alleged that these acts or omissions are a failure to exercise slight care which</u> <u>constitutes gross negligence.</u>

106.    It is alleged that the Defendants DSHS-CPS and law enforcement <u>failed</u> to adequately investigate, the children's living situation before removing them from their parents' care and failed to adequately investigate or follow up with the foster parents after they placed C.L. and

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

R.L. in separate foster care homes. Defendants knew of the exculpatory evidence from Drs. Fuch and Vuong and of C.L.'s Fragile X syndrome and had access to records that would have shown he had greatly deteriorated during his time with the Murlins but chose not to act. It is alleged that  DSHS and law enforcement conducted an incomplete investigation that proximately resulted in a harmful placement decision for C.L. and R.L.

107.   It is alleged that these acts or omissions is the failure to exercise slight care and therefore grossly negligent conduct by DSHS and law enforcement.

108.   It is alleged that DSHS employees either Area Administrator Beth Kutzera, or Jennifer White, Supervisor, entered the Langs name into the Child Abuse Management Information System (CAMIS) without notice and opportunity to be heard based on incompetent evidence with knowledge of exculpatory evidence. No reasonable social worker would enter names into a CAMIS with knowledge of exculpatory evidence.  Reports of child abuse and neglect shall be maintained and disseminated with strictest regard for the privacy of the subjects of such reports and to safeguard against arbitrary, malicious, or erroneous information or actions. The only explanation about their conduct was to interfere with child-raising practices, and the child's health, welfare and safety of the Ms. Lang's family unit and her future ability to adopt minority special needs children. Their conduct is indicative of their racial animosity toward the Langs which exhibits a bias investigation.

109.   It is alleged that this act by DSHS employees failing to provide the Langs notice and an opportunity to be heard is a violation of the equal protection clause of the 14th amendment and thus violations of the United States Constitution, Washington Constitution because the DSHS employees deprived the Lang right of life, liberty, and property without and due process of law.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

110.    It is alleged that the Social workers failed to exercise slight care therefore their conduct was grossly negligent.

111.    It is alleged that Defendants Sarah Coshow, Case Manger  failed to investigate the foster parents Vallembois, and Howard who verbally abused R.L. Defendant foster parent Howard subjected R.L. to a sexually charged strip search, and Howard and Vallembois assaulted R.L. by subjecting him to a needle injection of an unknown medication without the consent of the Langs. Knowing R.L. had an intellectual disability no reasonable social worker would believe that it would be lawful to have a foster child strip searched and injected with a needle without the consent of the bio-parent.  It is alleged that Sarah Coshow, Case Manager failed to act therefore conducted an incomplete and biased investigation that proximately resulted in the prolonged harmful placement decision for R.L.

112.    It is alleged that these acts or omissions by Sarah Coslow was the failure to act with slight care and is therefore grossly negligent conduct.

113.    It is alleged that Investigator Sarah Coslow, Sargent Troy Brightbill, and Deputy J Hammond, Cowlitz County Sheriffs did not use reasonable care in investigating the complaints from Ms. Lang. They It is alleged that Sarah Coslow, Sargent Troy Brightbill, and Deputy J Hammer conducted an incomplete and biased investigation. Sarah Coslow, Case Manager  and Deputy J Hammer's knew about the photographs taken by Ms. Lang that show that C.L. lost extreme amounts of weight while he was in the Murlins' care. See Exhibit 5 and Exhibit 16-A. Sarah Coslow, Sargent Brightbill and Deputy J Hammond observed the overcrowded conditions with six children living to trailers and Sarah Coslow and Deputy J Hammer received multiple complaints of child abuse from  Ms. Lang.  The lack of supervision of the Murlins exposed C.L. to a fire risk when another foster child set fire to the Murlin home. C.L. was

COMPLAINT - 32

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

forced to live in illegally overcrowded conditions. ~~drove C.L. him~~ Additionally, the investigative report from Laura Andersen showed the Murlins traveling  in an automobile at unsafe speeds. Given all these complaints of abuse and the fact that C.L. suffers from Fragile X syndrome and is nonverbal he could not speak for himself. Coslow and J. Hammer failed to act when they made a final policy decision not to call medical personnel to determine whether C.L.  is being abused. Their conduct was unreasonable and bias because no reasonable social worker or law enforcement would not further investigate Ms. Langs complaints.

114.    As a proximate cause C.L. remained in the abusive foster home of the Murlin's April 4, 2018.

115.    It is alleged that the failure to provide C.L.  medical personnel because he is not verbal is a failure to exercise slight care which amounts to gross negligence.

116.    Kimberly Copeland, MD, is an employee of Legacy Salmon Creek  Hospital and a member of the Child Abuse Assessment Team and was involved in the investigation.  She has an affirmative duty to expose child abuse or lack thereof as a mandatory reporter. It is alleged that Kimberly Copeland, adhered to the well settled custom or policy of finding abuse in child abuse referrals   when the result of her report dated March 7, 2017  was in direct contradiction of two prior independent doctors' reports from February 2, 2017 and February 3, 2017 that found no abuse and the children were safe to return home. Her contradiction caused the children to be taken from a safe environment (the Lang home) and placed in a harmful and abusive living situation with the Murlins for C.L. and Steve Vallembois and Jimmy Howard for R.L.  Though not a municipal or county employee or a social worker, as a medical doctor she is trained to do no harm. It is alleged no reasonable medical doctor would participate in the removal of  children from a safe environment and place them in an abusive home considering

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

the medical evidence that determined that the children were safe to return home the day they were taken into custody.

117.    Legacy Salmon Creek Hospital "Legacy" has the right, ability, and duty to control Kimberly Copeland, MD as she is a member of the Child Abuse Assessment Team with speaking authority.  Legacy failed to control the conflicting reports from the same hospital or Dr. Copeland's suppression of exculpatory evidence and testimony at the dependency hearing. Plaintiffs alleges Kimberly Copeland, MD failed to exercise slight care  and therefore grossly negligence, which is imputed to Legacy, as a respondent superior, because Dr. Copeland was acing within the scope of employment.

118.    Kimberly Copeland, MD never evaluated C.L. so she had no personal knowledge about his condition. Her March 7, 2017 report prolonged the detention of C.L. in the abusive home of the Murlins.  It is alleged that  Dr. Copeland omission was a failure to exercise slight care in her participation in the investigation which amounted to gross negligence.

119.    As a direct and proximate cause of Kimberly Copeland, MD acts or omissions, in concert with all other defendants aided in the removal of C.L. and R.L., from a safe environment to an abusive home.

120.    It is alleged that in the process of these acts or omissions Dick Lang died of the stress related conditions caused by the stress of battling to get his sons C.L. and R.L. back to their safe home.

121.    Kathy Shirilla is the agent for CASA as a court appointed guardian ad litem for R.L. and C.L. She had a fiduciary duty to protect their rights.  It is alleged that she breached that duty by   suppressing  exculpatory  evidence  from  Drs.  Fuchs  and  Vuong  during  the

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

investigation, and at every court proceeding that she appeared at after February 3, 2017 up to and including the testimony at the dependency proceeding.

122.   It is alleged that her suppression of exculpatory was a failure to exercise slight care and therefore grossly negligent conduct.   As proximate cause of her breach R.L. and C.L. remained in abusive foster homes and suffered damages the likes which are continuing.

123.   Kathy Shirilla is an agent of CASA.   She is court appointed to represent the Lang children as guardian et litem. Though her advocacy the Langs lost half of their visitation with C.L. and R.L. Furthermore, at every court proceeding that Kathy Shirilla appeared after February 3, 2017 up to and including the testimony at the dependency proceeding, she did not reveal the exculpatory evidence that opined that the children are safe to return home the same day they were taken. It is alleged that this is a breach of the fiduciary duty she had toward the children is imputed to CASA under the doctrine of vicarious liability because her acts and omissions inflicted harm to the Lang family.

124.   It is further alleged that Kathy Shirilla's breach of her fiduciary duty was failure to exercise slight care which is gross negligent conduct.

## VIII.   FRAUD

125.   Plaintiffs hereby incorporate all the allegations set forth in above in the paragraphs above as if set forth fully herein.

126.   It is alleged that Aat all relevant times defendant Hsieh was employed by the Office of Attorney General as an Assistant Attorney General. (AG) acted within the scope of his employment, and thus was acting under color of law when Hsieh brought an ex-parte motion filed for an ex-parte pick up order on February 3, 2017 to remove R.L. and C.L. from the safety of their family and placing them in the abusive homes of the Murlins foster parents for C.L.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

and Vallembois and Howard, foster parents for R.L. and filed a dependency petition on September 8, 2017, knowing of the visit by law enforcement and Gonzalez on February 2, 2017 where they did not take R.L. into custody and the exculpatory evidence from Drs. Fuchs and Vuong.

127.    Mr. Hsieh, Area Administrator Beth Kutzera, Investigator Kaytena Gonzalez, Jay Redmond, CFWS Social Worker Aaron Merino, and CFWS Social Worker Jaimee Scheffler, and Kimberly Copeland, MD, and CASA Kathy Shirilla controlled the flow of information to the court when Ms. Shirilla testified at a 3/21/17 Motion Hearings to suspend all visitations but the court cut the visitation in half. In that hearing she never mentioned that the children were safe to return home since February 3, 2017.

128.    It is alleged that all the above defendants testified at the Dependency Trial, ~~was~~ where aware of but deliberately failed to present to the court ~~with~~ exculpatory evidence from Dr. Fuchs and Dr. Vuong. The DSHS employees have a duty to be candid to the tribunal. The oath requirement is involved in every proceeding involving sworn testimony. No reasonable social worker, medical personnel, or guardian et litem, involved in protecting children from child abuse would suppress exculpatory evidence to perpetuate the prolonged separation of the Lang family unit.  Suppressing exculpatory evidence is failure to exercise slight care and grossly negligent conduct.

129.    As a result of the suppression of exculpatory evidence from their testimony in every proceeding after February 3, 2017, R.L. and C.L. remained removed from the Plaintiffs for 425 days and the Plaintiffs suffered damages, including the death of Dick Lang.

## IX.    DEFAMATION

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

130.    Plaintiffs hereby incorporate all the allegations set forth in above in the paragraphs above as if set forth fully herein.

131.    At all relevant times,  DSHS-CPS <u>Area Administrator Beth Kutzera Investigators, Kaytena Gonzalez, Jay Redmond, CFWS Social Worker Aaron Merino, and Jaimee Scheffler are employed by DSHS</u>, is employed by <u>DSHS</u> acted within the scope of their employment, acted consistently with the official policy and custom of DSHS of finding child abuse in child abuse cases and thus were acting under and color of law. It is alleged that a CPS investigator told Dr. Voung that Joanna Lang had "mental problems" and that there was "possible neglect in caring for R.L. and C.L." No reasonable social worker would lie to convince a doctor to find child abuse. This conduct shows their deliberate indifference to the Langs rights when the social workers would lie to Dr. Voung to remove C.L. and R.L. from the Lang's home.  Given the ~~lack of investigation~~ <u>intentional nature</u> by the Defendants up to that point, it is alleged that their conduct was <u>indifferent</u>, negligent, and reckless. <u>It is further  alleged that it could have only be done for one purpose, to destroy the Lang family unit</u>. <u>Disparaging Ms. Lang is a failure to exercise slight care that amounted to gross negligence.</u>

132.    Additionally, a ~~DSHS-CPS Worker~~ <u>Investigator Kaytena Gonzalez,</u> reported Joanna Lang to APS alleging abuse of Dick Lang, knowing this statement lacked any factual basis. This is another example of DSHS-CPS Investigator Kaytena Gonzalez's <u>deliberate indifference toward the Langs constitutional rights</u>. <u>False reporting</u> of a crime <u>is a failure to exercise slight care that amounted to gross negligence.</u>

133.    It is alleged that these defamatory statements and  <u>false reporting</u> are <u>examples how false allegations</u> cast Joanna Lang in a false light with other DSHS Social Workers <u>and professionals and entities</u> involved in the investigation such as <u>Sarah Coshow, Case Worker,</u>

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

CFWS Social Workers Aaron Merino and Jaimee Scheffler Social Worker and law enforcement, Jon Pfister, Reporting Officer, Officer Goudchaal, Dan Hsieh, AAG, CASA, Kathy Shirilla, Kimberly Copeland, MD, Legacy, Sargent Brightbill and Deputy J Hammond and the 4 armed uniformed officers who accompanied Gonzalez in February 3, 2017, not only did the false reporting damage~~d~~ Joanna Lang's ~~her~~ reputation among social and health workers, agents and law enforcement involved with the Lang family, ~~and~~ it caused Joanna Lang to be subjected to ridicule and hatred which exposed her to unwarranted and vindictive APS and child abuse investigations, and when Ms. Lang reported abuse to DSHS the City of Vancouver, law enforcement, and the Cowlitz County Sheriff's, City of Kelso, Sargent Brightbill and Deputy J Hammer, no one would believe her because they believed that her reports were full of false information, and she had "mental problems" which helped maintain the government's continual detention of C.L. and R.L in abusive homes away from the Lang's home for 425 days.

134.    As a proximate cause these defamatory statements caused additional damages to Plaintiffs, the likes of which are continuing.

## X.      WRONGFUL DEATH, RCW 4.20.010

135.    Plaintiffs hereby incorporate all the allegations set forth in above in the paragraphs above as if set forth fully herein.

136.    When the death of a person is caused by the wrongful act, neglect, or default of another person, his or her personal representative may maintain an action against the person causing the death for the economic and noneconomic damages sustained by the beneficiaries RCW 4.20.020.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

137.    It is undisputed <u>that the bond between a child and his or her parent, custodian, or guardian is of paramount importance, and any intervention into the life of a child is also an intervention into the life of the parent</u>. It is alleged that <u>Defendants DSHS-CPS employees and VPD Law Enforcement, City of Kelso Law enforcement, CASA, Kathy Shirilla and Kimberly Copeland, MD, by collective acts and/or omissions separated the Lang family and kept the children detained for 425 days in abusive homes.</u>

138.    At all relevant times, Defendant DSHS employees are employed by DSHS, <u>law enforcement was employed by their respective municipal employers and agents with speaking authority</u> acted within the scope of their employment, acted consistently with the policy of DSHS, thus were acting under color of law. Adhering to the widespread custom and practice of finding child abuse in child abuse cases, <u>no reasonable social worker, law enforcement officer, medical doctor, or guardian et litem would suppress exculpatory evidence</u> and embrace materially false and misleading information which caused the prolonged harmful placement of C.L. and R.L. which caused the stress and anxiety of battling the defendants to return his sons which caused the death of Dick Lang. ~~Additionally, at all relevant times defendant Hsieh was employed by the AG, acted within the scope of his employment, and thus was acting under color of law when he too ignored exculpatory evidence from Mr. Fuch and Dr. Voung from February 2, 2017 and February 3, 2017 shows the depraved indifference to the constitutional rights of the Langs.~~

139.    As a direct and proximate cause Joanna Lang and her children suffered emotional trauma the likes of which are continuing.

## XI.    DISCRIMINATION, 42 U.S.C. § 2000d et seq., RCW 49.60.030

140.    Plaintiffs hereby incorporate all the allegations set forth in above in the paragraphs

COMPLAINT - 39

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

above as if set forth fully herein.

141.     The Lang family have the right to be free from discrimination because of race. RCW 49.60.030.  They also have the right to make personal choices in matters of family life that are fundamental liberty interests protected by the Equal Protection Clause of the Fourteenth Amendment.  It is alleged that Aat all relevant times, the social workers employed by DSHS, acted within the scope of their employment, acted consistently with the policy of DSHS, and thus were acting under color of law when they failed to provide medical treatment to C.L. for the abusive treatment at the Murlins when he is non-verbal. Failed a proscribe wheelchair and guide dog to C.L. Other Caucasian children without a disability were not subject to this abuse by the State of Washington, City of Vancouver, City of Kelso CASA, and Legacy.

142.     As stated above, the Langs are white and Jewish. R.L. and C.L. are minority and have special needs.

143.     Plaintiffs allege that all DSHS Defendants, the City of Vancouver, law enforcement Cowlitz County law enforcement Kimberly Copeland, MD, and Kathy Shirilla,  gave better treatment to similarly situated families and children who were not mixed-race and/or not minority or adopted by Jewish parents or disabled. Defendants'  pattern of behavior is unexplainable on grounds other than harboring a discriminatory animus which was a substantial factor to the  bias investigation. Religion and race are fundamental rights. It is alleged that all Defendants' conduct violated RCW 46.60.030, the Equal Protection Clause the Fourteenth Amendment of the Constitution when they conducted a bias investigation.

144.     As a result of this discrimination, the Plaintiffs suffered damages, the likes of which are continuing.

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

Case 3:21-cv-05286-MLP   Document 15   Filed 05/20/21   Page 41 of 43

## XII.   CIVIL VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION (RICO) LAW, 18 U.S.C.§§ 1961-1968

145.   Plaintiffs hereby incorporate all the allegations set forth in above in the paragraphs above as if set forth fully herein.

146.   At all relevant times, DSHS employees, City of Vancouver and the City of Kelso law enforcement, <u>CASA, agent Kathy Shirilla and Kimberly Copeland, MD agent of Legacy,</u> acted within the scope of their employment, acted consistently with the policy of DSHS, official policies or established customs of finding child abuse in child abuse referrals were acting under color of law. Collectively, by adhering to their official policies or established customs coupled with their concealment of material evidence, proximately resulted the harmful placement decision and prolonged the detention of C.L. and R.L. <u>in abusive foster homes</u>.

147.   Plaintiffs <u>alleges</u> a claim under the Racketeer Influenced and Corrupt Organization <u>Act</u> (RICO) <u>because their acts and omissions could be considered to be a crime</u>. <u>RCW 9A.40.020</u>:

a.   Each element of each predicate act exists (Plaintiffs have completely pled the causes of action listed above);

b.   An "enterprise" exists (the Defendants <u>DSHS</u>, <u>City of Vancouver, City of Kelso, CASA, and Legacy</u> are all associated in law and in fact <u>by actions or omissions</u>);

c.   A pattern of "racketeering activity" exists (there was a pervasive failure to train municipal employees, <u>that was so widespread that it consumed two counties and became a force of law and the municipal employees, had final policy making authority or ratified the decisions of their subordinates,</u>  a pattern of negligent and bias <u>investigation</u>, <u>exists</u> by suppressing <u>exculpatory evidence which resulted in the unjustified removal and separation of R.L. and C.L. for 425 days.</u> ~~Discriminatory and perhaps culpable conduct toward the Plaintiffs demonstrated by the unjustified~~

COMPLAINT - 41

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

removal and ~~separation~~ of the children, by Defendants DSHS-CPS, the City of Vancouver ~~Kimberly Copeland, MD.~~

d.   The defamation, <u>shows the indifference</u> of the Defendants DSHS-CPS <u>investigators and social workers, the City of Vancouver and the City of Kelso, law enforcement, CASA, and Legacy, were so pervasive and widespread among the entities that the suppression of exculpatory evidence  kept the Lang's family apart for 425 days.</u> ~~of Joanna Lang, by  and the failure of~~ <u>DSHS/CPS</u> ~~Mr. Redman and~~ to provide C.L. with a ~~prescribed~~ ~~wheelchair, guide dog, and host of other DSHS services);~~

e.   There is a threat that the pattern will continue because there is no guarantee that DSHS-CPS employees, the City of Vancouver, law enforcement City of Kelso, law enforcement, CASA, and  Legacy <u>would not engage in actions or omissions and concealment of material evidence to justify the removal of other minority and disabled children in the future.</u>

f.   <u>There is no guarantee that DSHS employees, law enforcement, and Kimberly Copeland, MD and CASA, Kathy Shirilla</u> will not remove the children again should DSHS receive another referral from an incompetent referent against Joanna Lang <u>or other families caring for minority disabled children.</u>); and

g.   There is a sufficient nexus between the injury Plaintiffs suffered and the pattern of conduct by DSHS, <u>the City of Vancouver, law enforcement, City of Kelso law enforcement, CASA, Agent Kathy Shirilla, and Legacy employee   Kimberly Copeland, MD, all participated by</u> the <u>acts or omissions</u> <u>which perpetuated and prolonged the</u> wrongful/harmful placement, by the <u>failure to train, municipal employees</u>, which ~~exhibited~~ inflicted constitutional injury; by conducting an

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066

incomplete and bias investigation, <u>in</u> <u>their failure to exercise slight care</u>; <u>along with</u> <u>their</u> discriminatory actions, which was a <u>substantial factor to the bias investigation</u> and defamatory conduct that proximately caused the Plaintiffs' injuries, including the death of Dick Lang).

### XIII.   DEMAND

148.   WHEREFORE, the Plaintiffs pray for Judgment against all Defendants, and respectfully request this Court:

    a.   Award compensatory damages, both general and special, according to proof at trial;

    b.   Award exemplary and punitive damages as allowed by law;

    c.   Award attorney fees and costs;

    d.   Treble damages under 18 U.S.C.§§ 1961-1968;

    e.   Award such other relief as the Court deems proper;

    f.   Grant Plaintiffs a protective order against retaliatory action by DSHS-CPS; and

    g.   Grant Plaintiffs leave to amend this Complaint as discovery proceeds.

DATED this 17  day of May 2021.

            _____*s/Kevin L. Johnson*_____
            KEVIN L. JOHNSON, WSBA #24784
            Attorney for Plaintiffs

Kevin L. Johnson, P.S.
Attorney & Counselor at Law
West Side Business Plaza
1405 Harrison Ave NW, Suite 204
Olympia, Washington 98502
(360) 753-3066