UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOANNA LANG, individually and as personal representative of the Estate of Dick Lang, a marital community, and as guardian and parent of the minor children R.L. and C.L.,<br><br>                              Plaintiff,<br><br>        v.<br><br>CHERYL STRANGE, individually and as Secretary of the Washington State Department of Social and Health Services (DSHS), *et al.*,<br><br>                              Defendants. | CASE NO. 3:21-cv-05286-RJB<br><br>ORDER GRANTING DEFENDANT KIMBERLY COPELAND, M.D.'S MOTION TO DISMISS UNDER FRCP 12(b)(6) |

This matter comes before the Court on Defendant Kimberly Copeland, M.D.'s Motion to Dismiss Under FRCP 12(b)(6). Dkt. 25. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

Defendant's motion should be granted for the following reasons.

## I.    FACTS AND PROCEDURAL HISTORY

### A. FACTS

Relevant allegations from the first amended complaint (Dkt. 14) are as follows and are assumed to be true for purposes of this motion. Dick and Joanna Lang, "who are white and Jewish," adopted C.L. and R.L. in 2011 and 2013 respectively. Dkt. 14 at 10. The complaint states, "[f]or over 30 years, Dick and Joanna Lang opened their hearts and home to adopt minority special needs children because that was their calling." *Id.* C.L., who was born in 2011, has Fragile X syndrome. *Id.* R.L., who was born in 2003, has an intellectual disability. *Id.*

On January 4, 2017, and February 1, 2017, the Department of Social and Human Services Child Protective Services (CPS) received allegations that the Langs mistreated R.L. *Id.* Plaintiffs allege that these allegations came from a mentally ill family member. *Id.*

On February 2, 2017, Kaytena Gonzalez, a CPS investigator, and officers from the Vancouver Police Department came to the Lang's home. The CPS investigator "handed Ms. Lang a note demanding that Ms. Lang take R.L. to Legacy Salmon Creek ER for a full checkup. Ms. Lang complied." *Id.* at 12. The complaint, however, then states that Ms. Lang took R.L. to see his regular pediatrician, Dr. Charles Fuchs, not to the Legacy Salmon Creek ER. *Id.* Dr. Fuchs allegedly called CPS social worker Pamela Williams and told her that there were no signs of negligent treatment or maltreatment. *Id.* That evening, CPS investigator Gonzalez received a phone call from Legacy Salmon Creek Hospital informing her that the Langs did not bring R.L. to the hospital as requested. Dkt. 7-2 at 33; *see* Dkt. 14 at 13. The State then filed an *ex parte* motion seeking an order to remove R.L. and C.L. from the Lang's home. Dkt. 14 at 13. A court granted that motion, and on February 3, 2017, law enforcement seized C.L. and R.L. from the Lang's residence. *Id.*

1    CPS investigators took the two children to Legacy Salmon Creek Medical Center for a

2  "child abuse specific" evaluation by Dr. Tam Voung.  *Id.* at 15.  According to verified state

3  records that are not in dispute, Dr. Vuong diagnosed R.L. as "underweight," R.L.'s urine analysis

4  was "positive for ketones," and R.L.'s descriptions of the food he eats were "very detailed . . .

5  stating 'for breakfast I eats [sic] cereal and sometimes toast with fruit.  For lunch, I'll have

6  burritos or double-decker sandwiches. For dinner tonight I had a chili dog on a sweet Hawaiian

7  bun.'"  Dkt. 7-2 at 21–22.  Dr. Voung noted that R.L. told a nurse that R.L. told her he only eats

8  breakfast or lunch sometimes, and he mostly eats meals in his room.  *Id.* at 22.  Dr. Vuong

9  concluded that R.L. was "stable" and "safe to go home and follow up with pediatrician," for

10 "continued symptom management."  *Id.* at 21.

11   Also on February 3, 2017, CPS investigator Gonzalez reported Ms. Lang to Adult

12 Protective Services (APS) for alleged abuse of her husband.  Dkt. 14 at 15.  APS "determined

13 that there was no abuse" and the Prosecutor's Office later declined to pursue charges.  *Id.*

14 Following Dr. Vuong's evaluation, however, the children were not returned to the Lang's home

15 and were instead placed in separate foster homes.  *Id.* at 15–16.

16   Dr. Copeland is an employee of Legacy Salmon Creek Hospital and is member of the

17 Child Abuse Assessment Team (CAAT).  Dkt. 14 at 16.  On March 7, 2017, she assessed R.L.,

18 but not C.L.  *Id.*  She found that R.L. gained 24 pounds in the one month since being removed

19 from the Lang's custody and noted that R.L. reported being isolated in his bedroom, needed to

20 obtain permission and be escorted to the bathroom, and having accidents in his bedroom, daily

21 hunger, and reduction in food portions.  *Id.*  Dr. Copeland concluded that the Langs failed to act

22 in R.L.'s best interests or needs, exposed him to negligent and maltreatment, and presented a

23 clear and present danger his health, welfare, and safety.  *Id.* at 17.

24

ORDER GRANTING DEFENDANT KIMBERLY COPELAND, M.D.'S MOTION TO DISMISS UNDER FRCP 12(B)(6) - 3

1    There appears to have been two hearings in March 2017, one on March 21 and another on March 30, in which CPS and the State moved to suspend the Lang's visits with R.L. and C.L. Dkt. 14 at 17 and 36; Dkt. 7-2 at 8. On March 30, the court appears to have suspended all but "therapeutic visits," which were never scheduled. *Id.* On April 3, 2017, CPS supervisor Jennifer White concluded that Ms. Lang had negligently treated and maltreated R.L. *Id.* at 18.

Ultimately, on May 21, 2018, the State's Dependency Petition was denied. *Id.* at 20. On, April 4, 2018, R.L. and C.L. were placed back in the Lang home. *Id.* On June 30, 2019, Mr. Lang passed away.

**B. CLAIMS**

Ms. Lang brings the present suit against 26 defendants, alleging seven causes of action: (1) violation of state and federal due process rights pursuant to 42 U.S.C. § 1983, (2) negligent investigation under RCW 26.44.050, (3) fraud, (4) defamation, (5) discrimination under 42 U.S.C. § 2000d *et seq* and RCW 49.60.030, (6) violation of the Racketeer Influenced and Corrupt Organization Law (RICO), 18 U.S.C. §§ 1961-1968, and (7) wrongful death under RCW 4.20.010. Dkt. 14.

**C. PENDING MOTION**

In the pending motion, Defendant Copeland moves to dismiss all claims against her for failure to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 25.

In response, Plaintiffs do not meaningfully oppose the motion to dismiss as to the claims of discrimination or racketeering. Dkt. 29. Plaintiffs do not allege facts to support these claims against Defendant Copeland, and Plaintiffs' failure to respond in opposition will be construed as an admission that the motion has merit pursuant to Local Civil Rule 7(b)(2).

ORDER GRANTING DEFENDANT KIMBERLY COPELAND, M.D.'S MOTION TO DISMISS UNDER FRCP 12(B)(6) - 4

This Order will discuss Plaintiff's remaining claims of violation of state and federal due process rights, negligent investigation, fraud, defamation, and wrongful death.

## II.  DISCUSSION

### A.  STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

### B.  CLAIMS BROUGHT BY MS. LANG INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DICK LANG

Though Ms. Lang is the only person bringing this lawsuit, she brings it in three capacities: individually; as the personal representative of the estate of her late husband, Dick Lang; and as guardian of minor children R.L. and C.L. The complaint and Plaintiffs' response indicate Plaintiffs' intended for each cause of action to be separately alleged by Ms. Lang in each of her capacities.

This Order will first discuss the claims brought by Ms. Lang in her individual capacity and as the personal representative of Mr. Lang's estate. Except for wrongful death, those claims should be dismissed because the statute of limitations expired. The wrongful death claim should be dismissed because Ms. Lang does not allege a cognizable legal theory.

The Order will then discuss the claims brought on behalf of the minor children R.L. and C.L. because claims bought by minor children carry a different statute of limitations. RCW 4.16.190(1). Those claims should be dismissed because they do not plausibly state a claim for relief.

### 1. CONSITUTIONAL CLAIMS PURSUANT TO 42 U.S.C. § 1983

The law of the state in which an action arose sets the statute of limitations for a § 1983 claim. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Based on Washington law, the statute of limitations is three years. *Id*. The rules governing accrual of those claims, which is the date at which the limitations period begins to run, is a question of federal law. *Id*. at 388; *Flynt v. Shimazu*, 940 F.3d 457, 462 (2019). Under federal law, courts generally apply the "discovery rule to determine when a civil rights claim accrues." *Bird v. Dept. of Human Services*, 935 F.3d 738, 743 (9th Cir. 2019). Under this rule, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Id*. (internal quotation omitted).

Plaintiffs argue that the § 1983 action did not accrue until May 21, 2018, the date when the State's dependency petitions regarding R.L. and C.L. were dismissed. Dkt. 29 at 6. Plaintiffs base that argument on an inapt comparison to a false imprisonment claim, which does not accrue until the alleged false imprisonment ends. *Wallace*, 549 U.S. at 389. This, however, is "a distinctive rule – dictated, perhaps, by the reality that the victim may not be able to sue

while he is still imprisoned." *Id*.  Plaintiffs do not point to any authority indicating this § 1983 action would be subject to a distinctive or exceptional accrual rule.

Under the traditional rule of accrual, to which this action applies, "the statute of limitations commences to run when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391.

Plaintiffs' allege that Dr. Copeland's wrongful act was the report she issued on March 7, 2017, in which she concluded that R.L. may have been subject to abuse while in the Lang's care. Accordingly, the injury happened on March 30, 2017, when a court allegedly "relied on that opinion" to cut visitation between the Langs, R.L., and C.L. in half.  Dkt. 29 at 8.  Because Plaintiffs knew they had lost visitation rights on March 30, 2017, that is when the claim accrued. The statute of limitations expired three years later, on March 30, 2020.  Plaintiffs did not file the pending lawsuit until March 12, 2021, about one year later.  Dkt. 1 at 2.

Therefore, it is apparent from the face of the complaint that the Langs' individual and estate claims pursuant to § 1983 are barred by the statute of limitations and should be dismissed.

### 2. NEGLIGENT INVESTIGATION, FRAUD, AND DEFAMATION

As with a § 1983 claim, negligent investigation pursuant to RCW 26.44.050 and fraud carry a three-year statute of limitations.  *Petcu v. State*, 121 Wn. App. 36, 68 (2004) (negligent investigation); RCW 4.16.080 (fraud).  Defamation carries a two-year statute of limitations. *Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 469 (1986).  Washington law, which

governs the accrual date for these claims, also follows the discovery rule. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575–76 (2006).[1]

The Langs' individual and estate claims of negligent investigation, fraud, and defamation also are barred by the statute of limitations. The alleged injury occurred when allegedly false or defamatory statements were used to deny the Langs visitation with the minor children. These claims accrued in March 2017, so the statute of limitations for defamation expired in March 2019 and it expired in March 2020 for the claims of negligent investigation and fraud.

Therefore, these claims should be dismissed.[2]

### 3. WRONGFUL DEATH

Whether a wrongful death claim accrues at death or whether it accrues earlier if the decedent knew or reasonably should have known of an underlying personal injury claim does not have a clear answer under Washington law. *See White v. Johns-Manville Corp.*, 103 Wn.2d 344, 347 (1985) (If a decedent knew or should have known the cause of harm that ultimately cased his death, it is an open question "whether the wrongful death action … "accrued" at the time of the decedent's death, when the decedent first discovered or should have discovered the injury, or when the claimant first discovered or should have discovered the cause of death."); *Deggs v. Asbestos Corp. Ltd.*, 186 Wn.2d 716, 732 (2016) (discussing *White* and noting "courts around the country are currently spilt on when the statute of limitations on a wrongful death action

---

[1] A three-year statute of limitations also applies the Plaintiffs' claims of discrimination pursuant to RCW 49.60.030 and 42 U.S.C. § 2000d. *Cox v. Oasis Physical Therapy*, 153 Wn. App. 176, 195 (2009) (RCW 49.60.030); *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 712 (1993) (42 U.S.C. § 2000d). As discussed above, Plaintiffs discrimination claims may be dismissed without further discussion.

[2] Adult Plaintiffs discrimination claims are also subject to a three-year statute of limitations. *Cox*, 153 Wn. App. at 195; *McCoy v. San Francisco*, 14 F.3d 28, 29 (9th Cir. 1994). As discussed above, these claims should be dismissed because Plaintiffs do not meaningful oppose Defendant's motion, but the statute of limitations is additional grounds for their dismissal.

ORDER GRANTING DEFENDANT KIMBERLY COPELAND, M.D.'S MOTION TO DISMISS UNDER FRCP 12(B)(6) - 8

accrues"). Though *Deggs* provides guidance, the Court need not venture down that path in this case because Plaintiffs do not plausibly allege that Dr. Copeland owed Mr. Lang a duty of care.

Wrongful death claims "are a creature of statutes." *Long v. Dugan*, 57 Wn. App. 309, 312 (1990). The Washington wrongful death statute permits recovery for death caused by a "wrongful act" or neglect by the deceased's personal representative. RCW 4.20.010. Plaintiffs do not allege that Dr. Copeland intentionally caused Mr. Lang's death, so this claim must sound in negligence. To support a claim of negligence, the plaintiff must allege: (1) the defendant owed a duty of care; (2) that the defendant breached that duty; (3) proximately causing; (4) the resulting injury." *See Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48 (1996) (negligence); *see also Weisenburg v. Townsend*, 102 Wn. App. 1018 (2000) (applying negligence factors to wrongful death action) (unreported).

The existence of a duty is a question of law. *Id.* It exists when there is a legal obligation "to conform to a particular standard of conduct toward another." *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 449 (2010) (internal quotation omitted). The existence of a duty derives from considerations of logic, common sense, justice, policy, and precedent," i*d.*, and it turns "on the foreseeability of the risk created" by an action, *id.* at 436.

As a doctor performing a child abuse assessment, Dr. Copeland did not owe a duty of care to that child's guardian. She may have owed a duty to R.L., but it was not foreseeable that Mr. Lang would be been harmed by a negligent assessment. Therefore, Dr. Copeland did not owe Mr. Lang a duty of care as a matter of law, and Ms. Lang's wrongful death claim should be dismissed.

### C. MS. LANG FAILS TO STATE A CLAIM AS GUARDIAN OF MINOR CHILDREN

The following sections discuss why Ms. Lang's claims brought as guardian of R.L. and

ORDER GRANTING DEFENDANT KIMBERLY COPELAND, M.D.'S MOTION TO DISMISS UNDER FRCP 12(B)(6) - 9

C.L. should be dismissed.

## 1. CONSTITUTIONAL CLAIMS PURSUANT TO 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege (1) "the violation of a right secured by the Constitution and laws of the United States," (2) "that the alleged deprivation was committed by a person acting under color of state law," and (3) that the violation caused the plaintiff's injuries. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiffs' allege that Dr. Copeland, a private party, acted under color of state law because she conspired with state officials to deprive Plaintiffs' of their constitutional due process rights.

A private actor may be considered a state actor for purposes of § 1983 if the plaintiff can "'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Env't. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999)). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe*, 608 F.3d at 440 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989)).

Plaintiffs do not allege that such a meeting of the minds existed. Plaintiffs instead argue that Dr. Copeland acted in concert with the state when the state submitted her report to the court in its motion to revoke the Langs' visitation rights. Dkt. 29 at 7. Submitting a report that is later used in a visitation hearing does indicate a common objective. It merely indicates that Dr. Copeland issued a report and that her report was later used as evidence by a state attorney.

Therefore, Plaintiffs do not plausibly allege that Dr. Copeland acted under the color of law, and their § 1983 claims should be dismissed.

## 2. NEGLIGENT INVESTIGATION

Washington law does not recognize a common law cause of action for negligent investigation. *Ducote v. State, Dep't of Soc. & Health Servs.*, 144 Wn. App. 531, 534 (2008). It does recognize a statutory duty for law enforcement and the department of children, youth, and families (CPS) to investigate reports of abuse or neglect of a child pursuant to RCW 26.44.050. *See Tyner v. State Dept. of Soc. & Health Servs., Child Protective Servs.*, 141 Wn.2d 68 (2000).

Plaintiffs do not allege that Dr. Copeland was either law enforcement or acting as a CPS official. Plaintiffs' negligent investigation claims should be dismissed for that reason.[3]

## 3. FRAUD

There are nine elements to a claim of fraud:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Adams v. King Cnty.*, 164 Wn.2d 640, 662 (2008). As with all claims for relief, a plaintiff must plausibly allege the elements of fraud to survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). In addition, Federal Rule of Civil Procedure 9(b) sets a heightened pleading standard for a plaintiff alleging fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Under this heightened standard, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Required details include the "time, place,

---

[3] In reply, Defendant raises the argument that she is immune from suit under RCW 26.44.060 for both Plaintiffs negligent investigation and section 1983 claims. The Court will not reach that argument because it was raised for the first time on reply. *Cox*, 153 Wn. App. at 196–97.

ORDER GRANTING DEFENDANT KIMBERLY COPELAND, M.D.'S MOTION TO DISMISS UNDER FRCP 12(B)(6) - 11

1  and specific content of the false representations as well as the identities of the parties to the

2  misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).[4]

3        Plaintiffs allege Dr. Copeland failed to disclose material information (that previous

4  reports by Dr. Fuchs and Dr. Voung did not conclude that R.L. had been abused) and that her

5  failure caused them damage. Dkt. 29 at 10. This allegation does not satisfy either the standard

6  to survive a motion to dismiss under Rule 12(b)(6) or the heightened standard under Rule 9(b).

7        Plaintiffs do not satisfy the general 12(b)(6) pleading standard because they do not

8  plausibly allege falsity, the speaker's knowledge of its falsity, intent of the speaker that it should

9  be acted upon by the plaintiff, plaintiff's ignorance of its falsity, plaintiff's reliance on the truth

10  of the representation, or plaintiff's right to rely upon it. Plaintiffs' do not allege that Dr.

11  Copeland's report contradicted a report by either Dr. Fuchs or Dr. Voung. Dr. Fuchs noted

12  weight loss and Dr. Voung noted signs of malnourishment. Dkts. 29-4 and 29-6. The reports

13  came do different conclusions, but the material facts were consistent. Dr. Copeland, however,

14  noted the additional fact, which Plaintiffs do not dispute, that R.L. gained 24 pounds in the

15  month after being removed from the Lang's home. Dkt. 14 at 16. Furthermore, even if it did

16  include false information, Plaintiffs do not allege that she intended for it *to be acted upon by the*

17  *plaintiff*. Finally, Plaintiffs' general statement does not meet the heightened Rule 9(b) standard

18  because it is not specific as to which of the Plaintiffs were allegedly harmed by what

19  representations.

20        Plaintiffs claim of fraud should be dismissed.

---

[4] The Rule 9(b) pleading standard also applies to a racketeering claim under 18 U.S.C. §§ 1961-1968. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (2004). Though, as discussed above, the Court need not address Plaintiffs' RICO claim, failure to meet the Rule 9(b) standard would be additional grounds for dismissal.

ORDER GRANTING DEFENDANT KIMBERLY COPELAND, M.D.'S MOTION TO DISMISS UNDER FRCP 12(B)(6) - 12

### 4. DEFAMATION

The elements of defamation are (1) falsity, (2) an unprivileged communication; (3) fault, and (4) damages. *Stiles v. Kearney*, 168 Wn. App. 250, 262 (2012).

Plaintiffs' defamation claim only relates to statements made about Ms. Lang. As discussed above, Ms. Lang's defamation claim is barred by the statute of limitations. Plaintiffs do not allege that either Dr. Copeland defamed either minor child. To the extent that Plaintiffs intend to bring a claim of defamation on behalf of R.L. or C.L., that claim should be dismissed.

### III.  ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant Kimberly Copeland M.D.'s Motion to Dismiss Under FRCP 12(b)(6) **IS GRANTED**;
- Defendant Copeland **IS DISMISSED** from this matter.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 2nd day of August, 2021.

ROBERT J. BRYAN
United States District Judge